ILANA DIAMOND ROVNER, Circuit Judge,
concurring in the judgment.
The 1998 collective bargaining agreement, as written, gave Anheuser Busch the authority to pay individuals working on two-person routes a lower commission than workers assigned to one-person routes. The unambiguous terms of that agreement also barred the arbitrator from looking to practices pre-dating the agreement (what Judge Easterbrook refers to as “pre-signing conduct”) as a source of new or modified contract terms; Article 20, Section 20 expressly provided that “[tjhis Agreement constitutes the full and complete agreement between the parties and supersedes all prior agreements between the parties or their representatives, oral or written, including all practices not specifically preserved by the express provisions of this Agreement.” (Emphasis mine.) We are agreed, therefore, that any prior oral understandings that Anheuser-Busch may have had with the union, and any previous practice with respect to the commissions paid on two-person routes, cannot be imported into the 1998 agreement.
Whether the arbitrator would have been justified in concluding that Anheuser-Busch’s practice, for two months after the 1998 agreement took effect, of paying workers on two-person routes at the higher, one-person rate (what Judge Easter-brook refers to as “post-signing conduct”) effectively modified the terms of the 1998 Agreement, is not a question we are called upon to answer, for that is not what the arbitrator held. The arbitrator never inquired whether the parties’ post-signing conduct was sufficient, in and of itself, to trump the plain language of the contract. At all times, he was concerned with whether the parties had signaled an intent to carry forward their pre-signing understandings and practices in the 1998 Agreement. This much is evident from the way in which the arbitrator framed the question before him: “I must decide whether a long-standing past practice supersedes the contract language.” Arbitrator’s Opinion and Award at 17 (emphasis mine), quoting the Union’s Brief at 12. But that question is answered unequivocally by Article 20, Section 20 — all prior practices not expressly preserved by the contract are displaced, and the written terms of the contract control.
True enough, the arbitrator did advert to the parties’ post-signing conduct. But as the arbitrator’s rationale makes plain, he viewed the post-signing conduct as a window onto the parties’ past practices, not as an independent revision of the 1998 terms regarding commission rates. What the arbitrator seized upon is the parties’ failure, upon execution of the 1998 Agreement, to promptly abandon their pre-sign-ing practice and conform their conduct to the pertinent terms of the new contract— as if longstanding practices were to be read into the contract unless timely discontinued by the parties. See Arbitrator’s Opinion and Award at 22 (“Had the practice under review not been carried over into the term of the 1998-2003 Agreement, *1146 the zipper clause, as well as the parol evidence rule, would undoubtedly have invalidated it.”). In the end, it is the parties’ pre-signing conduct that the arbitrator read into the contract; their post-signing conduct is cited merely as a convenient bootstrap to reinsert a longstanding, but unwritten, practice into the agreement. See, e.g., Arbitrator’s Opinion and Award at 20 (“the Company did, in fact, carry the practice embodied in Green’s [1989] promise into the 1998-2003 contract”). Yet, the unmistakable effect of Article 20, Section 20 is to wipe the slate clean of such previous understandings and practices. And no one is arguing that the parties modified or abandoned that provision. Without the pre-signing conduct to rely upon, the arbitrator’s construction of the agreement is wholly bereft of support.
I do not think that the arbitrator was acting in bad faith, or that he purposely set about to dispense his own brand of industrial justice. His own perception of the equities does appear to have influenced his construction of the contract, however. See, e.g., Arbitrator’s Opinion and Award at 23-24. More importantly, I think it evident that his decision purporting to interpret the 1998 agreement relied substantially on the unwritten understandings and lengthy course of conduct that preceded that agreement — and resort to such pre-signing conduct was verboten under the express terms of the contract. To that extent, I agree that the arbitrator exceeded his authority, and that his award must be vacated.